UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

ISAAC MORALES,

        Plaintiff,

   -v-                                    No. 18-CV-6374-LTS-JLC

CITY OF NEW YORK FOR RIKER'S ISLAND,
et al.,

        Defendants,

-------------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        Plaintiff Isaac Morales ("Mr. Morales" or "Plaintiff"), pro se, asserts claims of constitutional rights violations pursuant to 42 U.S.C. section 1983 ("section 1983") against Defendants the City of New York for Riker's Island (the "City"); Captain Greaves; Correction Officer Dutchin ("Officer Dutchin")[1]; Correction Officer Gray ("Officer Gray"); and Captain(s) John/Jane Doe of the Anna M. Kross Center (the "AMKC"), Warden(s) John/Jane Doe of Riker's Island, and Deputy Warden(s) John/Jane Doe of Riker's Island (the "Doe Defendants") (collectively, "Defendants"). Plaintiff alleges that violations of his First, Eighth, and Fourteenth[2] Amendment rights occurred while he was in the custody of the New York City Department of

---

[1]     The complaint and docket identify Officer Dutchin as Officer Dutch. Defendants assert his name is correctly spelled "Dutchin." (Docket Entry No. 21, Memorandum of Law in Support of Defendants' Motion ("Def. Mem."), at 1 n.1.)

[2]     The docket and submissions of the parties are ambiguous as to whether Plaintiff was a pretrial detainee or convicted prisoner at the time of the alleged constitutional violations. The Court has analyzed Plaintiff's constitutional claims under both the Eighth and Fourteenth Amendments. This decision discusses only the broader Fourteenth Amendment standard because a failure to state a claim as a pretrial detainee under the Fourteenth Amendment necessarily entails a failure to state a claim as a convicted prisoner under the Eighth Amendment.

Corrections (the "DOC").  (Amended Complaint ("AC"), docket entry no. 6.)[3]  Defendants

move to dismiss the AC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

(Docket Entry No. 20.)  The Court has jurisdiction of this action pursuant to 28 U.S.C. section

1331.

       The Court has carefully considered the parties' submissions and, for the following

reasons, grants Defendants' motion in its entirety.


<u>BACKGROUND</u>

       The following summary of relevant facts is drawn from the AC, the well-pleaded

factual content of which is taken as true for purposes of this motion practice, and the exhibits

contained in the Original Complaint, which is comprised principally of supplemental

documentary evidence.[4]  (Docket Entry No. 2, Original Complaint ("OC"),[5] at 13–66.)  On

December 10, 2018, the Court dismissed Plaintiff's Original Complaint for failure to state a

claim, but granted leave to amend certain claims, as explained below.  (Docket Entry No. 4,

("Order to Amend").)  The AC reasserts three claims for which the Court did not grant leave to

amend.  (<u>Id.</u> at 9, 11–13.)

       Plaintiff was taken into DOC custody on or about September 15, 2015, and

housed at the AMKC.  (AC at ¶ 1.)  The following facts alleged by Plaintiff are organized to

correspond to the claims raised in the AC.

---

[3]     The AC page numbers cited to herein refer to those created by the ECF system.

[4]     The Court has also considered factual allegations drawn from exhibits attached to the OC
and incorporated in the AC by reference.  <u>See</u> Cortec Indus., Inc. v. Sum Holding L.P.,
949 F.2d 42, 47 (2d Cir. 1991) ("[T]he complaint is deemed to include . . . any statements
or documents incorporated in it by reference." (citations omitted)).

[5]     The OC page numbers cited to herein refer to those created by the ECF system.

Deliberate Indifference to Serious Medical Needs

Plaintiff asserts that there is "medical malpractice and/or medical negligence within [the DOC]." (AC, at ¶ 14.) First, Plaintiff alleges that he was misdiagnosed as "Polysubstance Dependent" and administered Librium for five days, "which further brought [his] health into question." (Id.) Upon admission into DOC custody, Plaintiff indicated he "drinks socially" and "occasionally smoked marijuana." (Id.) However, Plaintiff claims he was misdiagnosed as a result of a mix-up with his urine sample. (Id.)

Second, during a two-week period in December 2015, Defendants did not provide Plaintiff with health services, allegedly because the medical staff was on strike. (Id. at ¶ 16.) During those two weeks, Plaintiff suffered from a "severe ear ache/infection" that was left untreated or was inadequately treated, resulting in temporary hearing loss for two months. (Id.)

Separately, on April 4 and April 6, 2016, following his transfer to the Manhattan Detention Complex ("MDC"), the DOC indirectly exposed Plaintiff to the chemical agent MK-9 ("pepper spray")[6] during random searches of his housing unit. (Id. at ¶ 20.) Plaintiff alleges that the exposure affected his "eyes, ears, nose, face, and skin," and that the DOC did not provide him with medical attention after the April 4, 2016, incident. (Id.) Medical personnel documented the April 6, 2016, incident, but Plaintiff "protested being afforded medical attention." (Id.; OC, Exh. N, at 61.)

---

[6]     The Court takes notice of the fact that the terms MK-9 and pepper spray refer to the same chemical agent. See Williams v. City of New York Dep't of Corr., No. 19-CIV-9528-ER, 2020 WL 3893929, at *1 (S.D.N.Y. July 10, 2020) (noting that MK-9 spray is "commonly referred to as pepper spray").

Finally, Plaintiff complained of "an aching back (with sharp pain reaching into [his] shoulders)" from the time of his arrival at the AMKC.  (AC, at ¶ 13.)  Plaintiff was added to a list to receive, but never did receive, physical therapy because the medical staff, without his knowledge, repeatedly signed forms indicating that he refused or rescheduled his treatment.  (Id. at ¶ 13.)  Plaintiff asserts that he never refused physical therapy.  (Id.)  A Refusal of Treatment Form, dated February 12, 2016, indicates that a physician explained to Plaintiff that refusing treatment could lead to the "[p]rogression of [his] disease process which may increase morbidity/mortality [and] overall worsening of [his] condition."  (OC, Exh. E, at 28.)

In the Order to Amend, the Court held that the OC failed to state a claim for deliberate indifference to Plaintiff's serious medical needs for all of his alleged conditions, except for the denial of physical therapy, which the Order to Amend did not address.  (Order to Amend, at 6–7.)  The Court granted Plaintiff leave to amend his deliberate indifference claims and directed him to plead facts indicating either municipal liability or personal involvement of an individual defendant.  (Id. at 7.)

Deliberate Indifference for a Failure to Protect

Plaintiff alleges that, on February 28, 2016, Officer Dutchin "created an unsafe living environment" by "carelessly [taking] another [inmate's] word to open [Mr. Morales'] cell without his authorization/permission."  (AC, at ¶ 19.)  As a result, approximately five inmates who were members of the Bloods gang attacked him, stabbing him in the back of the head.  (Id., OC, Exh. M1, at 58-59.)  Thereafter, he requested protective custody and was transferred to a different housing unit.  (Id.)  However, in May 2016, Plaintiff was moved back to the unit where he had been attacked in February 2016.  (OC, Exh. M1, at 58.)

In the Order to Amend, the Court held that the OC failed to state a claim and granted Plaintiff leave to amend to plead facts showing that Officer Dutchin was deliberately indifferent to an excessive risk that he was, or should have been, aware of.  (Order to Amend, at 7.)

Deliberate Indifference to Conditions of Confinement—Plaintiff's Transfer

During his transfer to the AMKC in May 2016, Plaintiff spent approximately twenty-four hours on the transport bus without the opportunity to use the bathroom because of an administrative error involving his transfer papers.  (AC, at ¶ 21.)  After arriving at the AMKC, Plaintiff spent five days in the intake holding unit without being housed or given a bed, allegedly in part because the DOC planned to house him in the unit where the February 28, 2016, incident occurred.  (Id.)  Plaintiff asserts that he was held for the five days in the intake unit "in retaliation for him trying to get someone's attention that his safety was in jeopardy . . . if he were to remain [in general population] at the facility."  (Id.)

In the Order to Amend, the Court dismissed Plaintiff's deliberate indifference claim based on these allegations with leave to amend, and directed Plaintiff to plead facts establishing either an individual defendant's personal involvement or municipal liability.  (Order to Amend, at 8.)

Deliberate Indifference to Conditions of Confinement—Food Service

On February 18, 2016, inmate Stephan Martinez ("inmate Martinez") served food in an unsanitary manner by failing to wash his hands or put on gloves after using the toilet and by purposely dipping unsanitary utensils into the inmates' trays.  (AC, at ¶ 18.)  Inmate Martinez

attempted to attack Plaintiff after other inmates requested that he stop mishandling the food. (Id.)  Plaintiff came in contact with inmate Martinez's blood during the altercation, and the DOC medical staff prescribed Plaintiff several medications due to inmate Martinez's "uncertain" HIV status.  (Id.)  Plaintiff's "plea(s) for the meal(s) to be served in a more healthy/sanitary manner . . . were ignored by both defendants(s) Captain Greaves [and Officer] Gray."  (Id.)  When Officer Gray intervened, he told Plaintiff to "get with the program."  (Id.)  This claim was not addressed in the Order to Amend.

Mail Tampering

From September to December 2015, Plaintiff attempted to send personal and legal mail to relatives and his attorney from the AMKC.  (AC, at ¶ 17.)  In many instances, Plaintiff's mail was either not delivered or the recipients reported that the correspondence had been tampered with.  (Id. at ¶ 17.)  Plaintiff filed a grievance concerning a similar issue in March 2016.  (Id.)

In the Order to Amend, the Court held that the OC failed to state a claim for mail tampering.  (Order to Amend, at 10–11.)  The Court granted leave to amend the complaint to plead facts establishing actual harm or an ongoing practice of unjustified censorship.  (Id. at 11.)

Deliberate Indifference to Conditions of Confinement—Denial of Meal

On November 12, 2015, Plaintiff's housing unit was not served lunch.  (AC, at ¶ 15.)  Plaintiff was told that his housing unit would be compensated with a double dinner portion, but that meal was served late and consisted of cold cereal because "the kitchen/mess hall facility staff spill[ed] dinner on the floor en route to the housing unit."  (Id.)

In the Order to Amend, the Court held that the OC failed to state a deliberate indifference claim based on these events and further held that it would be futile to replead this claim.  (Order to Amend, at 9.)

Access to Law Library

From September 17, 2015, through December 2015, Plaintiff was not provided or offered access to the law library, "without any reasonable explanation."  (AC, at ¶ 12.)

In the Order to Amend, the Court held the OC failed to state a claim and did not grant leave to amend this claim.  (Order to Amend, at 11–12.)

Deliberate Indifference to Conditions of Confinement—Inadequate Mattress

Plaintiff suffered from back pain "due in large part to the mattress [he] had been subjected to sleep [on]."  (AC, at ¶ 13.)  Plaintiff alleges that the mattress was improperly placed on a "flimsy metal [bed] frame," and that the label indicated that it was intended to be used without a foundation.  (Id.)

In the Order to Amend, the Court held that the OC failed to state a deliberate indifference claim upon these facts.  The Court did not grant leave to amend this claim.  (Order to Amend, at 12-13.)

DISCUSSION

For a complaint to survive a Rule 12(b)(6) motion to dismiss, it must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Simple recitations of legal conclusions or bare elements of a cause of

action will not suffice.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The complaint must

"plead[] factual content that allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged."  Id. (citation omitted).  In deciding a motion brought

pursuant to Rule 12(b)(6), the Court accepts all nonconclusory factual allegations as true and

draws all reasonable inferences in Plaintiff's favor.  Roth v. Jennings, 489 F.3d 499, 501 (2d Cir.

2007).

　　　　　A pro se complaint is held to "less stringent standards than formal pleadings

drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007), and "must be construed

liberally to raise the strongest arguments it suggests."  Walker v. Schult, 717 F.3d 119, 124 (2d

Cir. 2013) (internal quotations and citations omitted).  "Nonetheless, a pro se complaint must

[still] state a plausible claim for relief."  Id. (citing Harris v. Mills, 572 F.3d 66, 73 (2d Cir.

2009)).


Personal Involvement of Defendants

　　　　　"It is well settled in this Circuit that personal involvement of defendants in

alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."

Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotations and citations omitted).

　　　　　 The AC does not allege that the Doe Defendants, who are referred to only by

generic titles, were personally involved in any of the claimed constitutional violations.  Other

than listing the Doe Defendants as parties to this action, the AC is devoid of any reference to

these individuals in connection with any of the factual allegations.  Accordingly, all claims

against the Doe Defendants are dismissed for lack of personal involvement.

As for the named defendants, Defendants Captain Greaves and Officer Gray are alleged to be personally involved in only the conditions of confinement claim arising from Plaintiff's allegation of unsanitary food service.  The factual allegations concerning these Defendants' response, or lack thereof, to the unsanitary food service incident adequately alleges their personal involvement.  To the extent the AC brings any other claims against Captain Greaves and Officer Gray, those claims are dismissed for lack of personal involvement.

Defendant Officer Dutchin is alleged to have been personally involved in the actions which give rise to the deliberate indifference claim for his failure to protect Plaintiff on February 28, 2016.  The allegation that Officer Dutchin opened Plaintiff's cell prior to the assault sufficiently establishes Officer Dutchin's personal involvement.  To the extent the Amended Complaint brings any additional claims against Officer Dutchin, those claims are dismissed for lack of personal involvement.

Municipal Liability

"[A] municipality cannot be held liable solely because it employs a tortfeasor— or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  In order to establish municipal liability under section 1983, a plaintiff must allege facts demonstrating the existence of a municipal "policy or custom" that caused the alleged constitutional deprivations.  Id. at 694.

Even construing the AC liberally, Plaintiff alleges no facts from which the Court may reasonably infer that any of the alleged constitutional violations were caused by a policy or custom of the City.  Nowhere in the AC does Plaintiff allege that any City policy inflicted the alleged deprivations.  Nor does he allege that any of the deprivations could be attributed to

individuals whose acts may fairly be said to represent the City's official policy.  See Jones v. Town of East Haven, 691 F.3d 72, 81 (2d Cir. 2012) ("[I]solated acts… by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability.")  As the events complained of here are not alleged to be part of any connected pattern or practice, the AC also fails to allege a pattern of unconstitutional deprivations from which the Court may fairly infer a municipal policy or custom.  Accordingly, the AC is dismissed as against the City for a failure to allege facts sufficient to support municipal liability for any of the alleged violations.

Serious Medical Needs

The Court also finds that Plaintiff's claims for deliberate indifference to his medical needs fail on the merits with respect to three of the alleged medical conditions.

Plaintiff made four separate allegations regarding his medical needs: (i) he was misdiagnosed and improperly prescribed medication; (ii) he suffered from an ear infection that was inadequately treated; (iii) he did not receive medical treatment after being exposed to pepper spray; and (iv) he did not receive physical therapy for his back pain.  Inmates are protected against an official's deliberate indifference to the conditions of their confinement under two different constitutional provisions—the Eighth Amendment's Cruel and Unusual Punishment Clause protects convicted prisoners; while the Fourteenth Amendment's Due Process Clause protects pretrial detainees.  Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017) (citations omitted). Under either constitutional standard, a deliberate indifference claim includes both an objective and subjective component.  See id.  To satisfy the objective component under both standards, a plaintiff "must show that the conditions, either alone or in combination, pose[d] an unreasonable

risk of serious damage to his health." Id. at 30 (quoting Walker, 717 F.3d at 125).  The

subjective component under each standard differs.  Hill v. City of New York, No. 19-CIV-9561-

CM, 2019 WL 6033027, at *2 (S.D.N.Y. Nov. 12, 2019) (citing Darnell, 849 F.3d at 34–35).  To

satisfy the subjective component of an Eighth Amendment claim, a convicted prisoner must

show that the official both "knows of and disregards an excessive risk to the inmate's health or

safety."  See Farmer v. Brennan, 511 U.S. 825, 837 (1994).  In contrast, to satisfy the subjective

component of a Fourteenth Amendment deliberate indifference claim, a pretrial detainee must

show that the official "knew, or should have known, that the condition posed an excessive risk to

health or safety" and failed to act with reasonable care to mitigate that risk.  Darnell, 849 F.3d at

35.

           With regard to Plaintiff's exposure to pepper spray and his misdiagnosis, Plaintiff

has not alleged facts which satisfy the objective component of his deliberate indifference to

medical needs claim.  The objective component requires the plaintiff to allege the existence of a

sufficiently serious medical condition "that may produce death, degeneration, or extreme pain."

Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (citation omitted).  Plaintiff's allegation that

the pepper spray affected his "eyes, ears, nose, face, and skin" is insufficient to establish a

serious medical condition without further description of the nature or magnitude of any lasting

harm caused by the pepper spray.  See Hong v. Aigle, No. 18-CIV-8110-VSB, 2020 WL

2836309, at *4 (S.D.N.Y. June 1, 2020) (citations omitted) ("District Courts in this circuit have

found that temporary effects of pepper spray . . . do not amount to a serious medical condition.")

Likewise, Plaintiff's vague allegation that the misdiagnosis and prescribed medication "further

brought [his] health into question" is conclusory and fails to allege with specificity how it might

have led to death, degeneration, or extreme pain.

As for Plaintiff's ear infection, even assuming for purposes of consideration of this motion that he can satisfy the objective component of the Fourteenth Amendment standard, Plaintiff has failed to allege facts satisfying the subjective component.  Plaintiff does not allege that he requested sick call or that any defendant knew, or should have known, about his ear infection and thereafter denied him medical attention.  Nor does Plaintiff allege that any individual acted with deliberate indifference to his medical needs.  Plaintiff merely asserts that there exists medical malpractice within the DOC.  At most, that conclusory assertion suggests negligence on behalf of the DOC, which is insufficient to support a constitutional claim.  See Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998) (citing Estelle v. Gamble, 429 U.S. 97, 105–06 (1976)) ("[N]egligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim.").

Accordingly, with respect to the alleged pepper spray exposure, misdiagnosis, and ear infection claims, the AC fails to state a claim for deliberate indifference to Plaintiff's medical needs.

Mail Tampering

The Order to Amend dismissed Plaintiff's mail tampering claim for failure to allege either municipal liability or personal involvement of a defendant.  The AC presents the same deficiencies, and the claim also fails to state a viable cause of action.  An inmate's right to the free flow of incoming and outgoing mail is protected by his right to access the courts and his First Amendment right to free speech.  See Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003).  To state a claim for violation of his right to access the courts due to interference with legal mail, Plaintiff must allege that Defendants' "deliberate and malicious interference actually impeded

his access to the court or prejudiced an existing action." Cancel v. Goord, No. 00-CIV-2042-LMM, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001) (citation omitted).  To state a claim for violation of his right to free speech, a plaintiff must show an ongoing practice of unjustified mail interference or a legal harm he suffered due to the interference.  See Goord, 320 F.3d at 351-52.

   Plaintiff's mail tampering allegations contained in the AC are as deficient as the allegations in the OC.  Plaintiff has failed to plausibly allege that any defendant acted with deliberate, malicious, or invidious intent.  Moreover, Plaintiff does not allege that he suffered any prejudice to any new or pending legal matter.  Although Plaintiff alleges that his mail was tampered with in violation of a City rule, such a rule violation, by itself, cannot be the basis for a constitutional claim under section 1983.  Accordingly, the AC fails to state a section 1983 claim for mail tampering.

Reasserted Claims that the Court Had Not Granted Leave to Amend

   The AC reasserts three section 1983 claims that the Court's prior order did not grant Plaintiff leave to amend: (i) the denial of a meal in November 2015; (ii) the denial of access to the law library; and (iii) the inadequacy of Plaintiff's mattress.  The AC is virtually identical to the OC and fails to plead any additional material facts with respect to these claims.  Accordingly, these three claims are dismissed in accordance with the Court's December 10, 2018, Order.  (Order to Amend, at 9, 11–13.)

Failure to Protect Claim Against Officer Dutchin

   The Eighth Amendment requires prison officials to take reasonable measures to "protect prisoners from violence at the hands of other prisoners."  Farmer, 511 U.S. at 833

(citation omitted).  To state a claim for failure to protect, a complaint must allege that officials

acted with "deliberate indifference" in response to an excessive risk of harm to a prisoner's

safety.  See id. at 834.  A plaintiff may establish that an excessive risk existed by identifying a

particular threat to his safety, or by identifying a pattern of analogous prisoner-on-prisoner

attacks which rendered it likely that he would be subjected to the same harm.  See Parris v. New

York State Dep't Corr. Servs., 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013).  "Courts routinely

deny deliberate indifference claims based upon surprise attacks."  Id. (citation omitted).

       Even assuming for purposes of this motion practice that Plaintiff's alleged

previous assault establishes that an excessive risk existed, the AC does not allege facts from

which the Court may plausibly infer the subjective component of deliberate indifference.  With

respect to what Officer Dutchin knew, Plaintiff alleges only that he was "careless[]" in opening

Plaintiff's cell.  This allegation does not provide any facts from which the Court may infer that

Officer Dutchin knew, or should have known, that opening the cell would pose a risk to

Plaintiff's safety.  Moreover, the term carelessness suggests negligence, which is insufficient to

support a constitutional claim.  See Farmer, 511 U.S. at 835 (stating that deliberate indifference

requires "a state of mind more blameworthy than negligence").  Accordingly, the AC fails to

state a claim that Officer Dutchin was deliberately indifferent to an excessive risk of harm to

Plaintiff, and the claim is therefore dismissed.


Food Service Claim Against Captain Greaves and Officer Gray

       Inmates are entitled to "nutritionally adequate food that is prepared and served

under conditions which do not present an immediate danger to the health and well-being of the

inmates who consume it."  Willey v. Kirkpatrick, 801 F.3d 51, 69 (2d Cir. 2015) (quoting Robles

v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983)); see also White v. Westchester Cty., No. 18-CIV-990-VB, 2018 WL 6493113, at *3 (S.D.N.Y. Dec. 10, 2018) (applying the same standard to pretrial detainees under the Due Process Clause of the Fourteenth Amendment).

The AC fails to allege facts from which the Court may plausibly infer that inmate Martinez's conduct posed a sufficiently serious and immediate danger to Plaintiff's health. The AC does not specify how inmate Martinez's actions posed an unreasonable risk of danger. All Plaintiff alleges is that inmate Martinez failed to take sanitary precautions after using the toilet and while serving food. Plaintiff has not alleged any specific consequence to his health, nor does Plaintiff allege his food was contaminated with any foreign objects. Cf. Ballard v. Lane, No. 18-CIV-1721-AJN, 2019 WL 1129158, at *2 (S.D.N.Y. Mar. 12, 2019) ("Courts have held that allegations that a prisoner was served food contaminated or tainted by foreign objects . . . are sufficient to plead a constitutional violation.") (internal citation and quotation omitted). Furthermore, the allegation that Plaintiff was given an "HIV-Cocktail" following the altercation does not cure the deficiency with respect to the objective component of Plaintiff's claim. For these reasons, the Court cannot plausibly infer that inmate Martinez's actions, and Captain Greaves and Officer Grey's responses, presented a serious and immediate danger to Plaintiff's health. Accordingly, Plaintiff's unsanitary food service claim is dismissed.

State and Local Law Medical Malpractice Claims

The Court construes the AC as potentially making state and local-law medical malpractice claims against the City. (See AC, at ¶ 14.) Because the Court has dismissed all of the federal claims, the Court declines to exercise supplemental jurisdiction over any remaining claims asserted based on state or local law. See 28 U.S.C. § 1367(c)(3).

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss the AC is granted in its entirety.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore <u>in</u> <u>forma</u> <u>pauperis</u> status is denied for the purpose of an appeal.  <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 444–45 (1962).  The Clerk of Court is respectfully requested to enter judgment in Defendants' favor and close this case.

This Memorandum Opinion and Order resolves Docket Entry No. 20.

Chambers will mail a copy of this Memorandum Opinion and Order to Plaintiff.

SO ORDERED.

Dated: New York, New York
        March 16, 2022

    __/s/   Laura Taylor Swain_____
    LAURA TAYLOR SWAIN
    Chief United States District Judge

**Copy to be mailed to:**

Mr. Isaac Morales
2315 Creston Avenue, Apt. 4C
Bronx, NY 10468